Daniel Webster TILLERY, Appellant,

v.

Frank A. EYMAN, Superintendent, Arizona State Prison, Appellee.

No. 72–2364.

United States Court of Appeals, Ninth Circuit.

Feb. 11, 1974.

Rehearing Denied March 22, 1974.

Wayne R. Godare (argued), Post-Conviction Legal Assistance Clinic, Tucson, Ariz., John P. Moore (argued), Scottsdale, Ariz., for appellant.

William J. Schafer, Asst. Atty. Gen. (argued), Gary K. Nelson, State's Atty. Gen., William P. Dixon, Asst. Atty. Gen., Phoenix, Ariz., for appellee.

Before ELY and SNEED, Circuit Judges, and SWEIGERT,* District Judge.

## OPINION

ELY, Circuit Judge:

In 1967 Tillery was convicted by an Arizona court of assault with a deadly weapon and of armed robbery. Tillery exhausted his available state remedies, the Arizona Supreme Court affirming his conviction in State v. Tillery, 107 Ariz. 34, 481 P.2d 271, cert. denied, 404 U.S. 847, 92 S.Ct. 151, 30 L.Ed.2d 84 (1971). Tillery filed a petition for a writ of habeas corpus in the District Court, pursuant to 28 U.S.C. § 2241(c). Upon a denial of his petition, Tillery appeals.

Here, Tillery raises the same two issues urged in the court below. He contends (1) that he was denied a fair trial when the trial court failed, sua sponte, to conduct an evidentiary hearing on Tillery's competency to stand trial and (2) that he was deprived of his constitutional right to testify in his own behalf. Because the issue is dispositive of the appeal, we consider only Tillery's contention concerning the trial court's failure to conduct an evidentiary hearing on his mental capacity.

During the course of the trial Tillery exhibited erratic and irrational behavior. The court was aware that Tillery yelled and screamed from his jail cell throughout the nights. In open court, Tillery laughed at the jury and made gestures at the bailiff. On April 28, 1967, the fourth day of the trial, after another vocal outburst by Tillery, the court admonished him to be quiet. Tillery thereupon ripped off his tie and shirt. He was removed from the courtroom screaming and the trial was recessed. In chambers, in the presence of the attorneys for both sides, the court stated:

> "I don't think he is faking it. I just —he has got that kind of a psychotic explosive behavior. I think under [Rule] 250 we had better take a look at him."[1]

The court ordered Dr. Norman D. Duley, a qualified psychiatrist, to examine Tillery.

On April 30, two days after the outburst, Tillery was examined by Dr. Duley. Dr. Duley's report, which was filed with the court, stated that Tillery did not show any signs of "psychosis or impairment of thinking processes." It was the psychiatrist's opinion that Tillery was competent to stand trial and to aid in his own defense. Upon receiving the report, the court decided to proceed with the trial without conducting an eviden-

---

* Honorable William T. Sweigert, United States District Judge, San Francisco, California, sitting by designation.

1. Former Ariz.R.Crim.P. 250(A) (reenacted and modified as 17 Ariz.Rev.Stat.Ann. Rules 11.2, 11.3, 16.4 (1973)) provided in pertinent part:
   "If before or during the trial the court has reasonable ground to believe that the defendant, against whom an indictment has been found or information filed, is insane or mentally defective, to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall immediately set a time for a hearing to determine the defendant's mental condition. The court may appoint two disinterested qualified experts to examine the defendant with regard to his present mental condition and to testify at the hearing. Other evidence regarding the defendant's mental condition may be introduced at the hearing by either party."

tiary hearing.[2] Defense counsel did not object to the court's action.

Before appearing in court on May 3d, Tillery refused to put on his shoes and socks. The deputies then completed dressing him and were escorting the defendant to the courtroom when Tillery broke away from them. He suddenly butted his head through a glass window, receiving superficial wounds. Dr. J. L. Sitterley, M. D., then examined Tillery and testified before the court as to his observations. Although Dr. Sitterley did not believe there was "any psychotic episode," he further testified:

"I do not believe he is currently capable of aiding in his own defense, and in his present condition I think there would be considerable in the way of courtroom turmoil.

"I have the feeling further that if this man were placed under sedation he might well be more capable of assisting in his own defense and aiding in the entire court procedure.

. . . . .

". . . I would further suggest that Dr. Norman Duley be asked to consult in this patient's condition and that the trial be delayed until this man is in a more lucid condition and after having been seen by the psychiatrist."

Even though the court then indicated that it was ordering Dr. Duley to examine Tillery again, the record at trial is silent as to the result of any subsequent examination.

One of Tillery's attorneys also testified concerning the defendant's condition of May 3d. Both defense counsel and the court were concerned that Tillery might demand to testify on his own behalf. Apparently they feared that, should Tillery take the stand, he would seriously prejudice his case by his emotional and erratic behavior. Defense counsel informed the court that Tillery, on May 3d, had demanded "in his wild-eyed ways" to take the stand, but the attorney stated that Tillery, at that time, "was very incoherent [and] very irrational." He further opined that Tillery did not know what he was doing. Although the attorney's testimony was directed at Tillery's demand to testify, the evidence was relevant to Tillery's mental capacity to stand trial.

■ From the foregoing evidence before the trial court, we conclude that Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) required the court to conduct an evidentiary hearing concerning the defendant's competency to stand trial. It is elementary that the conviction of an accused while he is incompetent violates his due process rights. Pate v. Robinson, *supra* at 378, 86 S.Ct. 836, 15 L.Ed.2d 815, *citing* Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). A defendant is considered competent to stand trial if he " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and if] he has a rational as well as factual understanding of the proceedings against him.' " Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), *quoted in* Pate v. Robinson, 383 U.S. at 388, 86 S. Ct. at 843 (dissenting opinion). In *Pate*, the Supreme Court held that when the evidence at trial raises a bona fide doubt as to an accused's competency to stand trial, the trial court, on its own motion if necessary, must conduct an evidentiary hearing to resolve that doubt.

■ This Court has previously explained that *Pate* requires an evidentiary competency hearing any time there is "substantial evidence" that the defendant may be mentally incompetent to stand trial. Moore v. United States, 464 F.2d 663 (9th Cir. 1972). We there stated:

" 'Substantial evidence' is a term of art. 'Evidence' encompasses all infor-

---

2. The Arizona Supreme Court ruled that there was no "manifest abuse of discretion" by the trial judge in refusing to hold an evidentiary hearing under former Rule 250. State v. Tillery, 107 Ariz. 34, 481 P.2d 271 (1971).

mation properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is 'substantial' if it raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence. The function of the trial court in applying Pate's substantial evidence test is not to determine the ultimate issue: Is the defendant competent to stand trial? It[s] sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. At any time that such evidence appears, the trial court *sua sponte* must order an evidentiary hearing on the competency issue. It is only after the evidentiary hearing, applying the usual rules appropriate to trial, that the court decides the issue of competency of the defendant to stand trial."

Moore v. United States, *supra* at 666; *see* Rhay v. White, 385 F.2d 883 (9th Cir. 1967).

■ The evidence at trial included Tillery's outbursts in the courtroom and his irrational behavior while in confinement. The trial judge, after witnessing Tillery's conduct, was convinced that Tillery was psychotic and ordered a psychiatric examination.[3] Both defense counsel and Dr. Sitterley related facts which indicated that Tillery was unable to aid in his own defense, and Dr. Sitterley even suggested that Tillery be sedated during the trial. It is significant, too, that both defense counsel and the court were convinced that Tillery was not mentally capable of testifying in his

own behalf without seriously prejudicing his case. We are persuaded that there was substantial evidence that Tillery may have been mentally incompetent to stand trial. Although there was information indicating that Tillery was in fact competent, such conflicting evidence can only be resolved by an evidentiary hearing.

■ Although defense counsel did not object to the procedure followed at trial, the state cannot rationally contend that Tillery waived his right to an evidentiary hearing. "It is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." Pate v. Robinson, 383 U.S. at 384, 86 S.Ct. at 841, *citing* Taylor v. United States, 282 F.2d 16, 23 (8th Cir. 1960).

■ Since Tillery was not afforded the required evidentiary hearing at his trial more than six years ago, the writ of habeas corpus must issue. Because of the difficulty of retroactively determining one's competency to stand trial, after the lapse of so many years, Tillery must be discharged unless Arizona elects to retry him within a reasonable time. Pate v. Robinson, *supra*; Moore v. United States, *supra*.

Upon remand, the District Court will hold Tillery's petition in abeyance for a reasonable period, not exceeding sixty days, in order to afford Arizona authorities an opportunity to retry Tillery, should they choose to do so.

Reversed and remanded, with directions.

SWEIGERT, District Judge (concurring):

Although erratic behavior does not of itself necessarily constitute substantial evidence that a defendant is incompetent

---

**3.** One court has suggested that whenever a trial court orders a psychiatric examination as to the defendant's present competency, then a bona fide doubt is immediately established as a matter of fact and as a matter of law. Brizendine v. Swenson, 302 F.Supp. 1011, 1019 (W.D.Mo.1969). We need not decide whether the trial court's order for a psychiatric examination, standing alone, reflected such substantial doubt as to Tillery's competency as to require, of itself, that a competency hearing be conducted.

to stand trial (*See* People v. Laudermilk, 67 Cal.2d 272, 61 Cal.Rptr. 644, 652 [1972]), it appears that in the present case the trial judge, having actually ordered an examination on the competency issue, impliedly found substantial evidence to so require. Having so found and ordered, the judge was obliged to go through with the hearing. However, the hearing was never completed, and for this reason, I concur.